IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| KAYSIE RILEY, ET AL., § | |
| § | |
| *Plaintiffs*, § | |
| § | |
| v. § | |
| § | Case No. 2:22-CV-0136-RSP |
| CHRISTUS HEALTH, D/B/A § | |
| CHRISTUS GOOD SHEPHERD § | |
| MEDICAL CENTER, ET AL., § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM ORDER

Before the Court, defendants Associated Clinicians of East Texas, PLLC d/b/a Diagnostic Clinic of Longview, Charles Newlin, and Kristi Saxon move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), **Dkt. No. 13**, and defendant Jerry Keaton moves for the same relief, **Dkt. No. 53**.[1] For the following reasons, the motions are **GRANTED**.

The First Amended Complaint alleges the following facts. Dkt. No. 37. Beginning on February 6, 2020, Kaysie Riley sought care related to her pregnancy from Kristi Saxon, CNM, and Charles Newlin, M.D., of the Diagnostic Clinic of Longview. On August 25, 2020, when Riley was 36 weeks pregnant, she was diagnosed with preeclampsia by Saxon and Newlin. Due to that diagnosis, Saxon and Newlin decided to admit Riley to Longview Regional Medical Center to induce labor and treat her for preeclampsia. Two days later, Riley was admitted to Longview Regional and delivered a baby boy. Riley remained hospitalized until August 31, 2020, during which she was diagnosed with hemolysis, elevated liver enzymes, low platelet count (HELLP Syndrome), preeclampsia, and hypercoagulability, and experienced the worst headaches she had

---

[1] Jerry Keaton's motion to dismiss, Dkt. No. 53, is an amendment to his original filing, Dkt. No. 50. Accordingly, Keaton's original motion to dismiss, **Dkt. No. 50**, is **DENIED AS MOOT**.

1

ever had. On August 31, 2020, Riley was discharged and instructed to return to the Diagnostic Clinic of Longview on September 4, 2020, for a followup. During the followup, Riley complained about worsening headaches. Saxon evaluated Riley and drew blood for analysis. The lab results showed a high platelet count. Saxon advised that the headaches were allergy-related and suggested a regimen of pseudoephedrine and Afrin, with which Riley complied.

On September 6, 2020, Riley sought care from the emergency department of Christus Good Shepherd Medical Center for worsening headaches and was treated by Jerry Keaton, M.D, and Faber White, M.D. From a CT scan, Keaton discovered an area of high density and diagnosed Riley with a hematoma, when in fact it was a thrombosis. Keaton informed White of the diagnosis who then independently evaluated Riley. Neither Keaton nor White ordered a CT angiogram or MRI which would have distinguished a hematoma from a thrombosis. Riley was then transferred to Christus Mother Frances Hospital for continuing care. Riley arrived at Christus Mother Frances Hospital on September 7, 2020. Riley claims Christus Mother Frances Hospital failed to provide treatment until ten hours after her brain was irreversibly damaged by the thrombosis.

Suit was initially filed against Christus Health D/B/A Christus Good Shepherd Medical Center, Christus Good Shepherd Medical Center, Associated Clinicians of East Texas, PLLC, D/B/A Diagnostic Clinic of Longview, Longview Clinic Operations Company, LLC, D/B/A Diagnostic Clinic of Longview, Regional Clinics of Longview, D/B/A Diagnostic Clinic of Longview, Charles Newlin and Kristi Saxon.[2] Dkt. No. 1. The complaint was amended to include Jerry Keaton and Faber White. Dkt. No. 37. Christus Mother Frances Hospital is not a defendant.

The complaint alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 for the defendants' alleged violations of 42 U.S.C.S.§ 1395dd (a), (b), (c), (d), and (e)(3)(B) of the

---

[2] Longview Clinic Operations Company, LLC, D/B/A Diagnostic Clinic of Longview and Regional Clinics of Longview, D/B/A Diagnostic Clinic of Longview have been dismissed. Dkt. Nos. 46 & 47.

Emergency Medical Treatment and Active Labor Act ("EMTALA"). Although the instant motions were raised under Federal Rule of Civil Procedure 12(b)(1), jurisdiction hinges on whether the complaint states a claim under EMTALA upon which relief can be grant. Further, Riley's oppositions seek the application of supplemental jurisdiction, 28 U.S.C. § 1367(a), for any claim beyond the protections of EMTALA. Dkt. Nos. 16 pp 5-7 & 55 pp 7-9. Accordingly, the Court must determine whether any claim falls within the protection of EMTALA before applying supplemental jurisdiction. Also, bearing in mind that the instant motions are raised under Federal Rule of Civil Procedure 12(b), the Court "accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor." *E.g.*, *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021)..

Under EMTALA, hospital emergency rooms "must provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists" before discharging a patient. 42 U.S.C. § 1395dd(a). An "appropriate medical screening examination" is judged by "whether it was performed equitably in comparison to other patients with similar symptoms" rather than "its proficiency in accurately diagnosing the patient's illness." *Marshall ex rel. Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998). EMTALA "was not intended to be used as a federal malpractice statute, but instead was enacted to prevent 'patient dumping', which is the practice of refusing to treat patients who are unable to pay." *Id*. "If [an] examination creates 'actual knowledge' of an emergency condition, the [provider] must attempt to stabilize the condition or appropriately transfer the patient to another medical facility to avoid liability. *Cervantes v. El Paso Healthcare Sys.*, 791 F. App'x 470, 472 n. 1 (5th Cir. 2019), as revised (Nov. 26, 2019) (citing *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 558-59 (5th Cir. 2000) and 42 U.S.C § 1395dd(b)(1)). Otherwise, a provider "is not

liable if it provides an appropriate medical screening examination and determines that the patient does not have an emergency medical condition." *Id.* (citing *Marshall*, 134 F.3d at 322).

The plaintiff bears the burden of proof in demonstrating "that the [provider] treated her differently from other patients." *Marshall*, 134 F.3d at 323-24. A plaintiff may carry this burden in one of three ways:

> (1) the hospital failed to follow its own standard screening procedures; or (2) there were differences between the screening examination that the patient received and examinations that other patients with similar symptoms received at the same hospital; or (3) the hospital offered such a cursory screening that it amounted to no screening at all.

*Fewins v. Granbury Hosp. Corp.*, 662 F. App'x 327, 331 (5th Cir. 2016).

As to defendants Associated Clinicians of East Texas, PLLC d/b/a Diagnostic Clinic of Longview,[3] Charles Newlin, and Kristi Saxon, Riley claims they should have exercised admitting privileges to Longview Regional Medical Center for additional stroke diagnostics and care. Dkt. Nos. 13 ¶¶ 23-35, 56-63 & 37 ¶¶ 25-37, 57-64. However, "[A] treating physician's failure to appreciate the extent of the patient's injury or illness, as well as a subsequent failure to order an *additional diagnostic procedure*, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening." *Marshall*, 134 F.3d at 323 (citations omitted) (emphasis added). Accordingly, these allegations are insufficient to state a claim under EMTALA.

As to defendants Christus Health D/B/A Christus Good Shepherd Medical Center, Christus Good Shepherd Medical Center,[4] Jerry Keaton, and Faber White, Riley claims that Keaton

---

[3] The complaint alleges that Associated Clinicians of East Texas, PLLC d/b/a Diagnostic Clinic of Longview is vicariously liable for the acts of Charles Newlin and Kristi Saxon and further liable for failing to supervise Kristi Saxon. Dkt. Nos. 1 ¶¶ 56-58 & 37 ¶¶ 57-59. Accordingly, the liability of the Associated Clinicians of East Texas, PLLC d/b/a Diagnostic Clinic of Longview hinges upon the actions of Newlin and Saxon.

[4] The complaint alleges that Christus Health d/b/a Christus Good Shepherd Medical Center is vicariously liable for the acts of Christus Good Shepherd Medical Center. Dkt. Nos. 1 ¶¶ 44-50 & 37 ¶¶ 46-51. The complaint further alleges that Christus Good Shepherd Medical Center violated EMTALA. Dkt. Nos. 1 ¶¶ 51-55 & 37 ¶¶ 52-56. However, the complaint fails to allege how Christus Good Shepherd Medical Center violated EMTALA beyond the actions of Jerry Keaton and Faber White. Thus, the Court will treat the claim against Christus Good Shepherd

misdiagnosed a thrombosis as a hematoma, falsely and negligently informed White that Riley was suffering from a hematoma, failed to stabilize Riley before transfer from Christus Good Shepherd Medical Center to Christus Mother Frances Hospital, and failed to transfer Riley to a facility with the capacity and qualified personnel to provide stroke care; that both Keaton and Faber failed to perform a CT angiogram or MRI to distinguish between a thrombosis and a hematoma; and that Faber failed to administer heparin to treat the thrombosis. Dkt. No. 37 ¶¶ 38-45, 65-78.

As to the claim of misdiagnosis against Keaton, Riley asserts that "[t]he interpretation of the CT scan … was false and erroneous because Mrs. Riley had a large thrombosis in her brain, and not a subdural hematoma. [Keaton] failed to provide the *appropriate medical screening examination*." Dkt. No. 55 p 4 (emphasis added). Such an argument was rejected by Fifth Circuit in *Cervantes*.

> Cervantes assert[ed] that Del Sol violated the EMTALA by failing to perform an appropriate medical screening examination. Specifically, she argue[d] that an appropriate medical exam must be "designed to arrive at a reasonable clinical diagnosis." … Under her interpretation of 42 U.S.C. § 1395dd(a), Del Sol violated the EMTALA because Dr. Khan misdiagnosed her and therefore did not arrive at a reasonable clinical diagnosis before she was discharged. In addition, Cervantes argue[d] that Dr. Khan should have obtained advice from the on-call surgeon, consulted another physician, reviewed medical literature, and taken other unspecified "affirmative steps" when diagnosing her.
> …
>
> Under our precedent, Cervantes fail[ed] to demonstrate how her medical screening examination was inappropriate. She has not argued "that the Hospital treated her differently from other patients." *Marshall*, 134 F.3d at 323-24. Similarly, she has not described how Del Sol "failed to follow its own standard screening procedures" or "offered such a cursory screening that it amounted to no screening at all." *Fewins*, 662 F. App'x at 331 (citation omitted).

---

Medical Center as one of vicarious liability for the actions of Keaton and White. Accordingly, the liability of both Christus Health d/b/a Christus Good Shepherd Medical Center and Christus Good Shepherd Medical Center hinges upon the actions of Keaton and White.

> Instead, Cervantes's argument amounts to a critique of Dr. Khan's April 9 diagnosis. This argument falls short. The EMTALA is not a federal malpractice statute. A physician's misdiagnosis, even if it could constitute negligence or medical malpractice, does not create an EMTALA claim.

791 F. App'x at 473. As mentioned above, Riley's claim is that Keaton "failed to provide the *appropriate medical screening examination*." Dkt. No. 55 p 4 (emphasis added). Riley does not claim that Keaton "treated her differently from other patients," "failed to follow its own … standard screening procedures," or "offered such a cursory screening that it amounted to no screening at all." *Cervantes*, 791 F. App'x at 473 (citing *Fewins*, 662 F. App'x at 331). "Instead, [Riley]'s argument amounts to a critique of Dr. [Keaton]'s … diagnosis. A physician's misdiagnosis, even if it could constitute negligence or medical malpractice, does not create an EMTALA claim." *Id.* Similarly, as to the claims that Keaton falsely and negligently informed White that Riley was suffering from a hematoma and failed to transfer Riley to a facility with the capacity and qualified personnel to provide stroke care and as to the claims that Faber failed to administer heparin to treat the thrombosis, Keaton's and Faber's actions derive from the misdiagnosis. *Marshall*, 134 F.3d at 323 ("[A] treating physician's failure to appreciate the extent of the patient's injury or illness, as well as a subsequent failure to order an additional diagnostic procedure, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening.") (citations omitted); *Cervantes*, 791 F. App'x at 473 ("Cervantes's argument amounts to a critique of Dr. Khan's April 9 diagnosis"). Riley does not claim that either Keaton or Faber "treated her differently from other patients," "failed to follow its own … standard screening procedures," or "offered such a cursory screening that it amounted to no screening at all." *Cervantes*, 791 F. App'x at 473 (citing *Fewins*, 662 F. App'x at 331).

As to the claim that both Keaton and Faber failed to perform additional diagnostics in the form of a CT angiogram or MRI to distinguish between a thrombosis and a hematoma is also

insufficient to establish a claim under EMTALA. *Marshall*, 134 F.3d at 323 ("[A] treating physician's failure to appreciate the extent of the patient's injury or illness, as well as a *subsequent failure to order an additional diagnostic procedure*, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening.") (citations omitted) (emphasis added).

As to the claims that Keaton failed to stabilize Riley before transfer from Christus Good Shepherd Medical Center to Christus Mother Frances Hospital, "stablilized" as defined in EMTALA means "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility." Dkt. No. 53 p 5 (citing 42 U.S.C.A. § 1395dd(e)(3)(B)). Nonetheless, a duty to stabilize does not arise unless a provider has "actual knowledge of the individual's unstabilized emergency medical condition if a claim under [EMTALA] is to succeed." *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1140 (8th Cir. 1996) (citations omitted); *Marshall*, 134 F.3d at 325 (citing *Summers*, 91 F.3d at 1140, and other appellate circuits for the same proposition). Riley does not plead that Keaton had actual knowledge of Riley's "unstabilized emergency medical condition" or any facts supportive of such a claim beyond misdiagnosis. *Id.*; Dkt. No. 37 ¶¶ 65-72. Accordingly, Riley's claim that Keaton failed to stabilize Riley before transfer is also insufficient to establish a claim under EMTALA.

Having found that the complaint is insufficient to establish any claim under EMTALA, the only federal question before the Court, there is no basis to apply supplemental jurisdiction. Further, Riley's opposition briefing, Dkt. Nos. 16, 21, & 55, does request leave to amend if the Court finds merit to the instant motions.  The ruling is not dealing with a simple error in the pleadings.  Defendants repeatedly point out in the briefing that Plaintiff does not allege that the

7

Defendants knew she had a thrombosis and chose not to properly treat it. Plaintiff never responds to the argument. Plaintiff has filed a careful and detailed complaint. It is simply a claim of medical negligence rather than a claim under EMTALA as that statute has long been interpreted by the Fifth Circuit. Plaintiff convincingly argues that supplemental jurisdiction would be appropriate if an EMTALA claim were properly pleaded. She just cannot plead one under the facts of this case.

For the reasons discussed above, the motions to dismiss, **Dkt. No. 13 & 53**, are **GRANTED**.

**SIGNED this 18th day of January, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE