IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KAYSIE RILEY, ET AL., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION No. 2:22-cv-0136-RSP |
| CHRISTUS HEALTH, D/B/A | § | |
| CHRISTUS GOOD SHEPHERD | § | |
| MEDICAL CENTER, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Before the Court is the Motion For Reconsideration filed by Plaintiffs Kaysie and Jonathan Riley (**Dkt. No. 62**). That motion was heard on March 10, 2023, along with cross-motions for summary judgment by defendant Christus Good Shepherd Medical Center ("CGSMC") (**Dkt. No. 67**), and by Plaintiffs (**Dkt. No. 71**).[1] For the following reasons, Plaintiff's motion for reconsideration will be granted and both motions for summary judgment will be denied.

I.   **Factual Background and Procedural Posture**

The Plaintiffs' pleadings show that beginning on February 6, 2020, Kaysie Riley sought care related to her pregnancy from Kristi Saxon, CNM, and Dr. Charles Newlin, MD, of the Diagnostic Clinic of Longview. On August 25, 2020, when Riley was 36 weeks pregnant, she was diagnosed with preeclampsia by Saxon and Newlin. Due to that diagnosis, Saxon and Newlin decided to admit Riley to Longview Regional Medical Center to induce labor and treat her for preeclampsia. Two days later, Riley was admitted to Longview Regional and delivered a baby boy. Riley remained hospitalized for several days until August 31, 2020, during which time she was

---

[1] Dkt. No. 71 is an amended filing of Dkt. No. 66. Accordingly, Riley's motion for partial summary judgment, **Dkt. No. 66**, is **DENIED AS MOOT**.

1

diagnosed with hemolysis, elevated liver enzymes, low platelet count (HELLP Syndrome), preeclampsia, and hypercoagulability, and experienced the worst headaches she had ever had. On August 31, 2020, Riley was discharged and instructed to return to the Diagnostic Clinic of Longview on September 4, 2020, for a follow-up visit. During the follow-up, Riley complained about worsening headaches. Saxon evaluated Riley and drew blood for analysis. The lab results showed a high platelet count. Saxon advised that the headaches were allergy-related and suggested a regimen of pseudoephedrine and Afrin, with which Riley complied.

On September 6, 2020, Riley sought care from the emergency department of CGSMC for worsening headaches and dizziness and was treated by Dr. Jerry Keaton, M.D, and Dr. Faber White, M.D.  On a CT scan, Keaton discovered an area of high density and diagnosed Riley with a hematoma, when in fact it was a thrombosis. Keaton informed White of the diagnosis who then independently evaluated Riley. Neither Keaton nor White ordered a CT angiogram or an MRI which would have distinguished a hematoma from a thrombosis. Riley was then transferred to Christus Mother Frances Hospital for continuing care. Riley arrived at Christus Mother Frances Hospital on September 7, 2020. While at Christus Mother Frances Hospital, Riley was diagnosed with a stroke causing irreversible damage.

Suit was filed against Christus Health d/b/a Christus Good Shepherd Medical Center;[2] Christus Good Shepherd Medical Center; Associated Clinicians of East Texas, PLLC, d/b/a Diagnostic Clinic of Longview; Longview Clinic Operations Company, LLC, d/b/a Diagnostic Clinic of Longview;[3] Regional Clinics of Longview, d/b/a Diagnostic Clinic of Longview;[4] Dr. Charles Newlin and Kristi Saxon. Dkt. No. 1. The pleadings were amended to include Dr. Jerry

---

[2] Dismissed by Stipulation, Dkt. No. 75 & 77.
[3] Dismissed by Stipulation, Dkt. No. 46 & 47.
[4] Dismissed by Stipulation, Dkt. No. 46 & 47.

Keaton and Dr. Faber White in the First Amended Complaint ("FAC"). Dkt. No. 37. Christus Mother Frances Hospital is not a defendant. The FAC alleged various violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, as well as state medical malpractice claims.

Defendants Associated Clinicians of East Texas, PLLC d/b/a Diagnostic Clinic of Longview, Charles Newlin, Kristi Saxon and Jerry Keaton moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (Dkt. Nos. 13 & 53), for failure to state a claim under EMTALA, which if true would remove the federal underpinning to apply supplemental jurisdiction, 28 U.S.C. § 1367(a). The motions, despite not being brought by all defendants, required the Court to consider whether Riley had pleaded a proper claim under EMTALA against any defendant before a determination on supplemental jurisdiction over the state medical malpractice claims. Ultimately, the Court concluded that the FAC did not plead a proper claim under EMTALA and granted the motions. Dkt. No. 59.

In response, Riley filed a Second Amended Complaint ("SAC"), and a motion for reconsideration, which relied in part on the allegations raised in the SAC. In the SAC, Riley clarified the EMTALA claim against CGSMC for, among other things, failing to follow CGSMC's policy entitled "Stroke Activation for Satellite Emergency Department." Dkt. No. 71-9. Before the hearing on the motion for reconsideration, Riley moved for partial summary judgment seeking a judgment that CGSMC violated EMTALA. CGSMC responded by moving to dismiss the SAC for failure to properly plead a claim under EMTALA and, alternatively, for summary judgment arguing that the evidence does not support an EMTALA claim. Oral arguments on these motions were held March 10, 2023.

## II.     LAW

Under EMTALA, hospital emergency rooms "must provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists" before discharging a patient. 42 U.S.C. § 1395dd(a). An "appropriate medical screening examination" is judged by "whether it was performed equitably in comparison to other patients with similar symptoms" rather than "its proficiency in accurately diagnosing the patient's illness." *Marshall ex rel. Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998). EMTALA "was not intended to be used as a federal malpractice statute, but instead was enacted to prevent 'patient dumping', which is the practice of refusing to treat patients who are unable to pay." *Id*. "If [an] examination creates 'actual knowledge' of an emergency condition, the [provider] must attempt to stabilize the condition or appropriately transfer the patient to another medical facility to avoid liability. *Cervantes v. El Paso Healthcare Sys.*, 791 F. App'x 470, 472 n. 1 (5th Cir. 2019) (citing *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 558-59 (5th Cir. 2000) and 42 U.S.C § 1395dd(b)(1)). Otherwise, a provider "is not liable if it provides an appropriate medical screening examination and determines that the patient does not have an emergency medical condition." Id. (citing *Marshall*, 134 F.3d at 322).

The plaintiff bears the burden of proof in demonstrating "that the [provider] treated her differently from other patients." *Marshall*, 134 F.3d at 323-24. A plaintiff may carry this burden by making one of three showings:

> (1) the hospital failed to follow its own standard screening procedures; or (2) there were differences between the screening examination that the patient received and examinations that other patients with similar symptoms received at the same hospital; or (3) the hospital offered such a cursory screening that it amounted to no screening at all.

*Fewins v. Granbury Hosp. Corp.*, 662 F. App'x 327, 331 (5th Cir. 2016). However, "a treating physician's failure to appreciate the extent of the patient's injury or illness, as well as a subsequent

failure to order an additional diagnostic procedure, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening." *Marshall*, 134 F.3d at 323 (citations omitted).

### III. Analysis

When considering a motion for reconsideration of an interlocutory order, the Fifth Circuit has instructed district courts to apply the Fed. R. Civ. P. 54(b) standard of review. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id*. (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing Fed. R. Civ. P. 54(b)), abrogated on other grounds, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n. 14 (5th Cir. 1994)).

Riley's motion for reconsideration, which relies upon the SAC, argues that the SAC adequately pleads a claim under EMTALA by alleging that CGSMC "failed to follow its own standard screening procedures," namely the "Stroke Activation for Satellite Emergency Department." Reading the policy in the light most favorable to the plaintiff, the policy is activated when a patient presents signs or symptoms that "could be associated with acute stroke." Dkt. No. 71-9 p 1. Riley alleges that headaches and dizziness are signs and symptoms that "could be associated with acute stroke" and that the "Stroke Activation for Satellite Emergency Department" should have been triggered by hospital staff. This is sufficient to survive a motion to dismiss, *e.g.*, *Fewins*, 662 F. App'x at 331, and thus proper grounds for reconsideration. See *Austin*, 864 F.3d at 336.

Defendants' opposition to the motion for reconsideration and their primary argument in the motion to dismiss is based upon the contention that the "Stroke Activation for Satellite Emergency

Department" is not a "standard screening procedure," *Fewins*, 662 F. App'x at 331, but instead an action procedure which takes place after screening. *E.g.*, Dkt. No. 67 pp 10-12. Such an argument merely creates a further dispute of fact, and is insufficient at the motion to dismiss phase.

While the motion for reconsideration will be granted, the Court notes that its earlier conclusion as to the sufficiency of the EMTALA allegations in the FAC has not changed. The instant ruling relies upon the allegations raised in the SAC, which were not known to Plaintiffs at the time suit was originally filed. See *Austin*, 864 F.3d at 336 ("[T]he trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.").

As to Riley's motion for partial summary judgment, and defendants' motion for summary judgment, the nucleus of the arguments turns on whether Riley's presentation on arrival of headache and dizziness "could be associated with acute stroke" properly causing the activation of the "Stroke Activation for Satellite Emergency Department" policy. Defendants argue, among other things, that only doctors perform medical examinations as opposed to registration or nursing staff, and that Riley's headache was not severe and sudden enough to be recognized as a sign or symptom of acute stroke. However, these contentions are arguably inconsistent with the deposition testimony of Dr. White that "the medical screening exam actually begins with the triage process where we take vital signs and we assess the patient's primary chief complaint," Dkt. No. 67-2, 18:15-18, and that the signs and symptoms Riley presented to CGSMC could be associated with acute stroke, Dkt. No. 71-5, 15:21-25. These disputes preclude summary judgment for either party. Other disputes include, but are not limited to, how the "Stroke Activation for Satellite Emergency Department" policy is interpreted and implemented, the symptoms Riley presented upon arrival to the CGSMC, whether the policy was followed, whether the policy may be properly considered a

screening policy, and the scope of the harm caused by the alleged violation. In light of these disputes, Riley's motion for partial summary judgment, Dkt. No. 71, and defendants' motion to dismiss and, alternatively, for summary judgment, Dkt. No. 67, are **DENIED**.

### IV. Conclusion

For the reasons discussed above, Riley's motion for reconsideration, **Dkt. No. 62**, is **GRANTED**, Riley's original motion for partial summary judgment, **Dkt. No. 66**, is **DENIED AS MOOT**, and CGSMC's motion to dismiss and, alternatively, for summary judgment, **Dkt. No. 67**, and Riley's motion for summary judgment, **Dkt. No. 71**, are **DENIED**.

**SIGNED this 16th day of March, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE